JOURNAL ENTRY AND OPINION
{¶ 1} The City of Cleveland appeals from an order of the trial court that denied its motion for summary judgment and claims that it is statutorily immune from suit. We affirm.
 {¶ 2} The record reveals that in June 2003, William Trader was driving his car northbound on Broadway Avenue in Cleveland when he stopped at a traffic light at the intersection of Broadway and I-77. Trader noticed the traffic signals swaying up and down, and moments later, a traffic pole on the east side of the street broke off at its base and fell onto the front of Trader's car, smashing part of the windshield and the front hood. Trader lost consciousness and was immediately taken to the hospital for examination.
 {¶ 3} In September 2004, Trader filed a complaint against the City of Cleveland (the "City"), claiming that as a direct and proximate result of the City's negligence, he suffered a concussion, neck strain, back strain, posttraumatic stress disorder and post traumatic stress headaches, and sought in excess of $25,000.
 {¶ 4} On February 24, 2005, the City moved for summary judgment claiming statutory immunity, and on March 24, 2005, Trader opposed the motion. Five days after Trader's brief in opposition was filed, the trial court denied the City's motion for summary judgment. However, on April 4, 2005, the City filed a response to the brief in opposition, asserting that it was filing a response brief within the required time period, and that the court's denial of summary judgment was premature.
 {¶ 5} On April 7, 2005, the trial court issued a second order finding that it had received and reviewed the reply brief, but was again denying the motion for summary judgment. It is from this order that the City appeals in a single assignment of error which states:
"BECAUSE THE CITY OF CLEVELAND IS ENTITLED TO IMMUNITY FROM PLAINTIFF'S CLAIMS UNDER R.C. 2744.02(A)(1) AND REASONABLE MINDS CAN ONLY CONCLUDE THAT NO EXCEPTION TO IMMUNITY APPLIES TO THE FACTS OF THIS CASE, THE TRIAL COURT ERRED IN DENYING THE CITY'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 6} We review the grant of summary judgment de novo, using the same standard as the trial judge, which requires granting the motion if there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C);Bonacorsi v. Wheeling Lake Erie Ry. Co., 95 Ohio St.3d 314,2002-Ohio-2220.
 {¶ 7} Under Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor.Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679,1995-Ohio-286, at paragraph three of the syllabus. All doubts must be resolved against the moving party. Osborne v. Lyles
(1992), 63 Ohio St.3d 326, 333.
 {¶ 8} The City contends that under R.C. 2744.02(A)(1), it is immune from negligent acts committed while performing governmental functions, and that the only exception to this immunity, R.C. 2744.02(B)(3), is inapplicable because the fallen traffic pole is not part of the "public road" as defined in R.C.2744.01(H).
 {¶ 9} Our analysis of subdivision immunity and any exceptions to immunity is governed by the Ohio Supreme Court's decision inGreene Cty Agricultural Soc. v. Liming, 89 Ohio St.3d 551, 556, 2000-Ohio-486, which held that:
"R.C. Chapter 2744 sets out the method of analysis, which can be viewed as involving three tiers, for determining a political subdivision's immunity from liability. First, R.C. 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)'s exceptions are found to apply, a consideration of the application of R.C. 2744.03 becomes relevant, as the third tier of analysis.[1] See Cater v. Cleveland (1998),83 Ohio St.3d 24, 28. See, also, Harp v. Cleveland Hts. (2000),87 Ohio St.3d 506, 509; Hill v. Urbana (1997), 79 Ohio St.3d 130, 133."
 {¶ 10} In Nease v. Med. College Hosp., 64 Ohio St.3d 396,400, 1992-Ohio-97, the Ohio Supreme Court held that the availability of statutory immunity raises a purely legal issue which is properly determined prior to trial. On the other hand, once an immunity defense is deemed available as a matter of law, its applicability to the actions of the parties becomes fact specific. Hall v. Bd. of Edn., Fort Frye Loc. School Dist. Bd.of Edn. (1996), 111 Ohio App.3d 690.
 {¶ 11} Therefore, our analysis begins with the supposition of immunity and R.C. 2744.02(A)(1) entitled, "Classification of functions of political subdivisions; liability; exceptions," which states:
"For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 12} The City asserts, and Trader acknowledges, that the City's role was a governmental function as defined by R.C.2744.01(C)(2)(e). The statute further defines such functions as, "the regulation of the use of, and maintenance and repair of roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds." The City is therefore immune from suit unless an exception is found under R.C.2744.02(B).
 {¶ 13} Effective April 9, 2003, and therefore in effect at the time of the accident, Trader asserts that an exception to such immunity exists under the revised R.C. 2744.02(B)(3) subsection which states:
"Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge."
 {¶ 14} Under the second tier of analysis as set forth inLiming, supra, this court must now examine whether this exception applies. The City acknowledges that R.C. 2744.02(B)(3) concerns maintenance of the roads, but stresses that the statute was altered by Senate Bill 106 when the legislature removed the words "sidewalks" and "public grounds" from the former R.C.2744.02(B)(3).
 {¶ 15} Under the updated version of R.C. 2744.02(B)(3), the statute refers to liability for a city's failure to keep "public roads" in repair; therefore, we turn to R.C. 2744.01 which defines "public roads" as including:
"public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. `Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices."
 {¶ 16} It is the City's contention that when R.C.2744.02(B)(3) and 2744.01(H) are read in concert, the statutes exclude a city's negligent failure to repair rights-of-way or any other object not contained in or part of the roadway itself, and that the pole in question was located in the right-of-way.
 {¶ 17} "Right-of-way" is defined in R.C. 4511.01 (UU) as either of the following, as the context requires:
The right of a vehicle, streetcar, trackless trolley, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path; (2) A general term denoting land, property, or the interest therein, usually in the configuration of a strip, acquired for or devoted to transportation purposes. When used in this context, right-of-way includes the roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits under the control of the state or local authority.
 {¶ 18} According to the affidavit of David Bruckner, a licensed surveyor for the City's Division of Engineering and Construction, the public right-of-way for Broadway Avenue is sixty feet and is also under the control of the City of Cleveland. (Affidavit of David Bruckner at paragraph 3). Bruckner measured from the center line of Broadway Avenue thirty feet to the northeast side of the road where Trader's accident occurred and found that the right-of-way includes the street, curb, and 6.4 feet of the sidewalk. (Id. at paragraph 5). The traffic pole was two feet from the curb, which, as Bruckner found, was within the right-of-way on Broadway Avenue. (Id. at paragraph 6).
 {¶ 19} In its appellate brief, the City argued that because the designated sixty foot strip of right-of-way land on Broadway Avenue extends over the whole road and out onto the sidewalk past the location of the pole, it must be excluded from the definition of a "public road." (Brief at 10). However, if this court were to adopt this interpretation, that portion of "road" on Broadway where cars travel would also be excluded — a result that is clearly contradictory to the statute's intent.[2]
 {¶ 20} Moreover, although the definition of "public roads" excludes from a city's responsibility several specific items such as berms and shoulders, absent from this list is the type of traffic pole involved in this accident. The City contends that the plain language of R.C. 2744.01(H) is "clear and unambiguous," and that it is the duty of this court to interpret the statute as written. Because of the absence of the exact article involved in this accident however, the statutory language is not clear and unambiguous. Although this Court cannot assume a traffic pole is included in the statutory definition, we also cannot assume that this type of pole is excluded.
 {¶ 21} The City urges this court to apply a strict interpretation of the statute. The City alternatively urges this court to accept the concept that bridges and public roads have always been dedicated to vehicular use, "[a]lthough not defined in R.C. 4511.01." (Brief of Appellant at 9).
 {¶ 22} Another question of fact which precludes the grant of summary judgment is whether the condition of the traffic pole constituted negligence on the part of the City. Despite legislative changes, R.C. 2744.02(B)(3) still imposes a duty to keep public roads "in repair." Deposition testimony indicated that the pole in question was at least twenty years old and at the end of its lifespan, and that the mast arm and the cap of the pole were missing at the time of the accident — items that are supposed to be replaced if removed. (Deposition of Robert Mavec at 21-23; Deposition of Charles Vokhaty, at 9, 15).
 {¶ 23} As the record on appeal indicates, questions of fact remain as to the items meant to be included in the "right-of-way," and if the inclusion or exclusion of such items from this definition then leads a jury question to determine whether the condition of the traffic pole constituted negligence on the part of the City. Where conflicting evidence is presented, it is the trial court's duty to submit the issue to the jury.O'Day v. Webb, (1972), 29 Ohio St.2d 215.
 {¶ 24} For these reasons, the City's sole assignment of error is overruled.
 {¶ 25} The ruling of the trial court is affirmed.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., concurs.
 Colleen Conway Cooney, P.J., concurs In Judgment Only.
[1] At some point, R.C. 2744.05 may also become relevant, as R.C. 2744.02(B) is expressly made subject to that section as well.
[2] See R.C. 2744.01, which defines "public roads" as including "the street."